Fee Paid

FILED
CLERK, U.S. DISTRICT COURT
JUN - 7 2022
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

NO CV-30
S/I

Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
Robert J. King (Bar No. 302545)
robert@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Suite 201
Los Angeles, California 90014
tel:  (213) 465-4802
fax:  (213) 465-4803

Attorneys for Plaintiffs
Al Hutchings & Jesse Houghton

LACV22-3883-CAS-PDx

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, ex. rel., **Alfred Hutchings**, and **Jesse Houghton**, <br><br> Plaintiffs, <br><br> vs. <br><br> **Harbor Industrial Services Corporation**, a California corporation; **Innovative Terminal Service**, a California corporation; **Marine Technical Services, Inc.**, a California corporation; **Innovative Engineering and Maintenance**, a California corporation; and **Ocean Terminal Services, Inc.**, **William Michael Hawke**, an individual, **Dianne Marie Hawke**, an individual, **and Nicholas Tonsich**, an individual, <br><br> Defendants. | CASE NO. <br><br> **QUI TAM COMPLAINT:** <br><br> 1) **VIOLATIONS OF THE FALSE CLAIMS ACT** <br><br> <u>Demand for Jury Trial</u> <br><br> **FILED UNDER SEAL PURSUANT TO** 31 U.S.C. §§ 3730(b)(2) |

COMPLAINT

1.  Relators Al Hutchings and Jess Houghton ("Relators"), bring this qui tam action in the name of the United States of America, by and through their attorneys, and allege as follows:

## INTRODUCTION

2.  This is a civil fraud action by qui tam Relators Alfred Hutchings and Jesse Houghton on behalf of the United States (the "Government") against Defendants Harbor Industrial Services Corporation, Innovative Terminal Service, Marine Technical Services, Inc., Innovative Engineering and Maintenance, Ocean Terminal Services, Inc., William Michael Hawke, Dianne Marie Hawke, and Nicholas Tonsich, ("Defendants") to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*

3.  Defendants falsely stated their annual payroll costs in order to recover more funds pursuant to the Government's Payroll Protection Program ("PPP"), claiming millions of excess profits from the taxpayers of the United States. Defendants' owners then went on lavish spending sprees with their ill-gotten gains, purchasing luxury goods and services.

## PARTIES

4.  Plaintiff **Alfred Hutchings** was a resident of California at all times relevant to this complaint. Mr. Hutchings worked as a mechanic for Defendant Innovative Terminal Services from 2018 until his illegal termination in 2021.

5.  Plaintiff **Jesse Houghton** was a resident of California at all times relevant to this complaint. Mr. Houghton has worked as a mechanic for Innovative Terminal Services from 2019 through June 2020 and at Defendant Harbor Industrial Services Corporation from June 2020 through present.

6.  Defendant **Harbor Industrial Services Corporation** ("Harbor Industrial") is California company located in California, with a principal place of business at 211 N. Marine Ave, Wilmington, California 90744. Defendant William Michael Hawke serves as Harbor Industrial's sole director and as its Chief Executive Officer.

7.  Harbor Industrial Services provides maintenance for cranes at the Port of Long Beach. As a result, it primarily employs union mechanics, along with a small management and

administrative staff. Harbor Industrial is a member of the Pacific Maritime Association ("PMA"), and all of its union mechanics are hired through, and paid by, the PMA.

8. The Pacific Maritime Association is a non-profit organization that negotiates labor contracts, processes payroll and manages benefits for its member companies, manages benefits for union members, and provides guaranteed payments to union members when they are not working at member companies.

9. Defendant **Innovative Terminal Service** ("Innovative Terminal") is California company located in California, with a principal place of business at 211 N. Marine Ave, Wilmington, California 90744. Defendant William Michael Hawke serves as Innovative Terminal's sole director and as its Chief Executive Officer.

10. Innovative Terminal Service provides maintenance for cranes at the Port of Long Beach. As a result, it primarily employs union mechanics, along with a small management and administrative staff. Innovative terminal is a member of the Pacific Maritime Association, and all of its union mechanics are hired through, and paid by, the PMA.

11. Defendant **Marine Technical Services, Inc.** ("Marine Technical") is California company located in California, with a principal place of business at 211 N. Marine Ave, Wilmington, California 90744. Defendant Dianne Marie Hawke serves as Marine Technical's sole director and as its Chief Executive Officer.

12. On information and belief Marine Technical Services was formed to bid on ship repair contracts and has few if any full time employees. Instead, Marine Technical Services hires employees when it wins contracts to perform the work.

13. Defendant **Innovative Engineering and Maintenance** is a California company with its primary address at 330 Broad Avenue Wilmington, California 90744. Defendant William Michael Hawke serves as Innovative Engineering's Chief Executive Officer and with his wife Dianne Marie Hawke as the two directors of the company.

14. On information and belief, Innovative Engineering and Maintenance performs contracted construction work in and around the Port of Long Beach. Innovative Engineering

has few, if any, full-time employees. Instead, Innovative Engineering hires employees when it wins contracts to perform the work.

15. Defendant **William Michael Hawke** is a resident of California and with his wife Defendant Dianne Marie Hawke, owns and directs Defendants Harbor Industrial, Innovative Terminal, Marine Technical, and Innovative Engineering.

16. Defendant **Dianne Marie Hawke** is a resident of California with her husband Defendant William Michael Hawke, owns and directs Defendants Harbor Industrial, Innovative Terminal, Marine Technical, and Innovative Engineering.

17. Defendant **Ocean Terminal Services, Inc.**, ("Ocean Terminal") is a California Corporation with its primary address at 2500 Via Cabrillo Marina, Suite 300. Defendant Nicholas Tonsich serves as the Chief Executive Officer and sole director of Ocean Terminal.

18. Ocean Terminal Services Service provides maintenance for cranes at the Port of Long Beach. As a result, it primarily employs union mechanics, along with a small management and administrative staff. Ocean Terminal Services is a member of the Pacific Maritime Association, and all of its union mechanics are hired through, and paid by, the PMA.

19. Defendant **Nicholas Tonsich** is a resident of California and serves as the Chief Executive Officer and sole director of Defendant Ocean Terminal.

## VENUE AND JURISDICTION

20. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732.

22. This Court has personal jurisdiction over Defendants because they are located in the Central District of California and transact business in the District.

23. Venue is proper in this district under 28 U.S.C. § 1391(a) because the acts that give rise to the complaint. A substantial part of the events or omissions giving rise to the claim occurred in this district.

24. On information and belief, Defendants submitted at least one claim for funds from the Payroll Protection Program in the Central District of California.

## ORIGINAL SOURCE

25. This suit is not based on prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit, or investigation; in a Government Accountability Office, Auditor General's Report, Inspector General's report, hearing audit, or investigation; in the news media; or otherwise as the term "publicly disclosed" is defined in 31 U.S.C. § 3730(e)(4), but rather upon information from Relators.

26. In the alternative, to the extent there has been a public disclosure, Relators are original sources as defined by the FCA.

27. Relators have direct and independent knowledge of Defendant's fraudulent activities.

28. Relators have also voluntarily provided this information to the Government prior to filing this action as required under 31 U.S.C. § 3730(e)(4)(B).

29. Relators will serve on the United States a copy of this Complaint and a written disclosure statement setting forth and enclosing all material evidence and information that they possess, pursuant to 31 U.S.C. § 3730(b)(2).

## FACTS

### The Paycheck Protection Program

30. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, which, in part, created the Paycheck Protection Program ("PPP") allowing the federal Small Business Administration to fund business loans. The PPP funds were intended to help businesses retain their workforce during the COVID-19 crisis. As an incentive to do so, the loans are forgivable if a business uses the PPP funds to pay employee wages.

31. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application to the Small Business Administration. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including its average monthly payroll expenses and number of employees. These figures are used to calculate the amount of money the small business is eligible

to receive under the loan. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their current payroll expenses.

32. PPP regulations required applicants to calculate their average monthly payroll from 2019 by taking the total payroll costs for 2019 and dividing by twelve. For purposes of the calculation, wages in excess of $100,000 per year paid to any employee were excluded. Employers were eligible for a first round PPP loan in an amount equal to 2.5 times their average monthly payroll costs.

33. PPP regulations permitted seasonal businesses to use any consecutive 12-week period between May 1, 2019 and September 15, 2019 for determining its maximum loan amount.

### Harbor Industrial's Fraudulent PPP Application and Loan

34. On information and belief, Harbor Industrial Services applied for and received a $3.98 million PPP loan in 2020 through the American Business Bank. On information and belief the loan has now been forgiven in full.

35. On information and belief Harbor Industrial's loan application listed at least 191 full time employees in order to support the $3.98 million disbursement. In order to support a $3.98 million first round PPP loan, a business must have a monthly payroll cost of $1,592,000, which equals a yearly payroll of $19.1 million. Assuming that every employee was earning the maximum allowable salary of $100,000 a year an employer would need a payroll of at least 191 employees to justify this claimed payroll.

36. In reality, Harbor Industrial employed far fewer than 191 full-time employees. As a union employer, Harbor Industrial posts a seniority list for all of its mechanics. The seniority list shows that at the end of 2019 Harbor Industrial employed only 49 mechanics.

37. In addition to the approximately 49 mechanics employed by Harbor Industrial in 2019, the company has a small number of managers, approximately five to seven in 2020, and a few administrative staff—approximately four employees. Further, many of the management and administrative staff were shared across Mr. Hawke's companies and provided services to Innovative Terminal as well as Harbor Industrial.

38. On information and belief, Harbor Industrial obtained PPP funds based on falsified and inflated information about its payroll costs.

### Innovative Terminal Services' Fraudulent PPP Application and Loan

39. On information and belief, Innovative Terminal Services applied for and received a $1.38 million PPP loan in 2020 through the American Business Bank. On information and belief the loan has now been forgiven in full.

40. On information and belief Innovative Terminal Services' loan application listed at least 66 full time employees in order to support the $1.38 million disbursement. In order to support a $1.38 million first round PPP loan, a business must have a monthly payroll cost of $552,000, which equals a yearly payroll of $6.624 million. Assuming that every employee was earning the maximum allowable salary of $100,000 a year an employer would need a payroll of at least 66 employees to justify this claimed payroll.

41. In reality, Innovative employed far fewer people. Mr. Hutchings had access to the union seniority at Innovative Terminal Services, which showed approximately 24-25 mechanics in 2019. As with Harbor Industrial, Innovative Terminal Services has a small number of managers, approximately five to seven in 2019 and 2020, and a few administrative staff— approximately four employees. Further, many of the management and administrative staff were shared across Mr. Hawke's companies and provided services to Innovative Terminal as well as Harbor Industrial.

42. On information and belief, Innovative Terminal Services obtained PPP funds based on falsified and inflated information about its payroll costs.

### Marine Technical Services' Fraudulent PPP Application and Loan

43. On information and belief, Marine Technical Services applied for and received a $610,200 PPP loan in 2020 through the American Business Bank. On information and belief the loan has now been forgiven in full.

44. On information and belief Marine Technical Services' loan application listed at least 29 full time employees in order to support the $610,200 disbursement. In order to support a $610,200 first round PPP loan, a business must have a monthly payroll cost of

$244,080, which equals a yearly payroll of $2.928 million. Assuming that every employee was earning the maximum allowable salary of $100,000 a year an employer would need a payroll of at least 29 employees to justify this claimed payroll.

45. Relators are informed and believe that Marine Technical exists as a "filing" cabinet with few if any full time employees during the eligibility period.

46. On information and belief, even if Marine Technical Services had obtained a contract for vessel repair during the eligibility period, its personnel were paid significantly less than the $100,000 yearly salary and accordingly in order to justify the PPP loan amount Marine Technical Services would need to employee significantly more than 29 employees.

47. On information and belief Marine Technical Services did not work on any vessel repair contracts in 2019 or 2020.

48. On information and belief, Marine Technical Services obtained PPP funds based on falsified and inflated information about its payroll costs.

**Innovative Engineering and Maintenance's Fraudulent PPP Application and Loan**

49. On information and belief, Innovative Engineering and Maintenance applied for and received a $398,088 PPP loan in 2020 through the American Business Bank. On information and belief the loan has now been forgiven in full.

50. On information and belief Harbor Industrial's loan application listed at least 19 full time employees in order to support the $398,088 PPP disbursement. In order to support a $398,088 first round PPP loan, a business must have a monthly payroll cost of $159,235.2, which equals a yearly payroll of $1.910 million. Assuming that every employee was earning the maximum allowable salary of $100,000 a year an employer would need a payroll of at least 19 employees to justify this claimed payroll.

51. On information and belief, the part-time personnel hired by Innovative Engineering are e paid significantly less than the $100,000 yearly salary and accordingly to justify the PPP loan amount Innovative Engineering and Maintenance would need to employee significantly more than 19 employees.

52. On information and belief Innovative Engineering Services performed only two contracts in 2019—building structures at the Port of Long Beach.

53. No more than five or six employees were employed on each project (which were not concurrent) and which lasted no more than three weeks each.

54. On information and belief, Innovative Engineering and Maintenance obtained PPP funds based on falsified and inflated information about its payroll costs.

### Ocean Terminal Services' Fraudulent PPP Application and Loan

55. On information and belief, Ocean Terminal Services applied for and received a $5.39 million PPP loan in 2020 through Wells Fargo Bank.

56. On information and belief Ocean Terminal Services' loan application listed at least 258 full time employees in order to support the $5.39 million PPP disbursement. In order to support a $5.39 million first round PPP loan, a business must have a monthly payroll cost of $2.156 million, which equals a yearly payroll of $25.872 million. Assuming that every employee was earning the maximum allowable salary of $100,000 a year an employer would need a payroll of at least 258 employees to justify this claimed payroll.

57. However as a union employer, Ocean Terminal Services is required to post a seniority list of all of its union mechanics. At the end of 2019, Ocean Terminal Services had only approximately 71 mechanics in its employ.

58. This is not surprising, Ocean Terminal Services is a smaller company than Harbor Industrial and services fewer cranes. There is no reason that Ocean Terminal Services would have hundreds more mechanics.

59. On information and belief, in addition to its union mechanics, Ocean Terminal Services has a small number of administrative and managerial staff.

60. On information and belief, Ocean Terminal Services obtained PPP funds based on falsified and inflated information about its payroll costs.

### The Hawkes go on a Spending Spree

61. Following his receipt of the inflated PPP loans, Defendant William Michael Hawke went on a lavish personal spending spree. On information and belief, Mr. Hawke purchased a house for $900,000 in Palos Verdes Estates in or around May 2021. Mr. Hawke also purchased a $3.5 million house in Long Beach in or around July 2020. Mr. Hawke also owns additional property in Mammoth Lakes, CA and in Rancho Palos Verdes.

### Relators' Complaints and Resulting Harassment

62. In approximately August 2020 Mr. Hutchings became aware of the PPP loans obtained by Michael Hawke's companies and confronted Mr. Hawke. Mr. Hutchings told him that the numbers were inflated, that it was wrong to submit fraudulent applications, and that he should return the money. Mr. Hawke responded by telling him to "fuck off."

63. In November 2020, Relators Houghton and Hutchings called Mr. Hawke together and again emphasized that the loans were fraudulent, were wrong, and that Mr. Hawke should return the money. In response, Mr. Hawke threatened Relators—telling them that he could make their lives very difficult.

64. Shortly after this second conversation with Mr. Hawke, other employees at Relators job sites began to harass them. Mr. Hutchings was subjected to death threats, had urine thrown at him, and suffered other harassment. Mr. Houghton's toolbox was plastered with images of dead rats, others refused to work with him, and filthy rags and other objects were frequently dumped on his personal belongings.

65. In late 2021 Mr. Hutchings approached the Federal Bureau of Investigation and reported his concerns about the PPP loans given to the companies owned and controlled by Mr. and Ms. Hawke. Mr. Hutchings also submitted two complaints to the Office of the Inspector General for the Small Business Administration—on January 31, 2022 (number 20220131p6oh) and on March 30, 2022 (number 2022033x8eh).

## FIRST CAUSE OF ACTION

*Causing False Claims in Violation of 31 U.S.C. § 3729(a)(1)(A)*

*(Against All Defendants)*

66. The United States repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

67. The Government seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(A). As set forth above, Defendants knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, presented or caused to be presented, to an officer or employee of the Government, false and fraudulent claims for Payment in connection with loans under the PPP program.

68. Specifically, Defendants falsely represented their average monthly payroll costs for purposes of calculating the maximum loan amount to which they were entitled under the rules and regulations governing the PPP program. Based on these falsified cost calculations Defendants requested loans in greater amounts than they were entitled to under the program.

69. Further, Defendant companies did not employ any of the union members for purposes of the PPP program. Rather, the union employees (who made up the bulk of the claimed payroll costs) were employees of the Pacific Maritime Association.

70. By reason of Defendants' false and fraudulent claims, the Government paid Defendants more money than they were entitled to under the PPP program and has been damaged in a substantial amount to be determined at trial.

71. The Government is further entitled to civil penalties as well as costs and attorney's fees as authorized by law.

## SECOND CAUSE OF ACTION

*Use of False Statements in Violation of 31 U.S.C. § 3729(a)(1)(B)*

*(Against All Defendants)*

72. The United States repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

73. The Government seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(B). As set forth above, Defendants knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, made, used, or caused to me made or used, false records and/or statements material to false and fraudulent claims in connection with their applications for loans under the PPP program.

74. By reason of Defendants' false and fraudulent statements, the Government paid Defendants more money than they were entitled to under the PPP program and has been damaged in a substantial amount to be determined at trial.

75. The Government is further entitled to civil penalties as well as costs and attorney's fees as authorized by law.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of themselves and the United States Government respectfully prays judgment as follows:

A. A judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's violations of the False Claims Act;

B. A judgment against Defendants for civil penalties as described (and adjusted for inflation) under 31 U.S.C. § 3729(a)(1)(G) for each of Defendants' violations of the False Claims Act

C. That Relators recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

D. That Relators be awarded all reasonable attorney's fees in bringing this action;

E. That in the event the United States Government Proceeds with this action, Relators be awarded an amount for brining this action of at least 15% but not more than 25% of the proceeds of the action;

F. That a trial by jury be held on all issues so triable;

G.   An award of pre-judgment interest; and

H.   For such other relief as this Court deems just and proper.

Dated: June 7, 2022

Respectfully submitted,

**KING & SIEGEL LLP**

By: *Robert J. King*
Robert King
Attorneys for Plaintiffs

**DECLARATION RE LACK OF NECESSITY FOR PROOF OF SERVICE**

I, Robert J. King, declare:

1. I am a partner at the law firm of King & Siegel, counsel for Relators in this matter. I am a member in good standing of the Bar of the State of California and I have been duly admitted to appear before this Court. The following is based on my personal knowledge.

2. I have examined the False Claims Act, codified at 31 U.S.C. §§ 3729 *et seq.* 31 U.S.C. 31 U.S.C. § 3730 provides that a complaint alleging violations of the False Claims Act "shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."

3. The Court has not ordered that the Complaint be served on the Defendant so no service is necessary.

4. On June 7, 2022 a copy of the Complaint was served via mail on the United States Government at the following addresses

> Civil Process Clerk
> United States Attorney's Office
> Federal Building
> 300 N. Los Angeles Street, Suite 7516
> Los Angeles, California 90012
>
> U.S. Department of Justice
> Attn: Fraud Section
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

/ / /
/ / /
/ / /
/ / /

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 7, 2022         By: *Robert J. King*
                                Robert J. King
                                Attorney for Relators